HANNAH HOLLORAN *vs.* ELLEN HOLLORAN.

Middlesex.    March 26, 1889. — May 11, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Writ of Entry — Adverse Possession — Fence — Title.*

At the trial of a writ of entry brought by a lot owner against an adjoining owner to recover an intervening strip of land, there was evidence that a fence, erected as a boundary between the lots, had existed more than twenty years continuously, being once rebuilt by a former owner of the tenant's lot; that the fence was upon the true boundary line between the lots, as claimed by the demandant, and included the strip with his lot; and that the strip had been used by the demandant's grantors and himself, owners of that lot, for more than twenty years continuously, openly, adversely, and under a claim of right. *Held,* that a finding was warranted that the demandant had acquired title by adverse possession up to the line of the fence, irrespective of the original boundary line.

WRIT OF ENTRY, dated March 15, 1888, to recover a parcel of land in Somerville. Plea, *nul disseisin.* Trial in the Superior Court, before *Bishop,* J., who allowed a bill of exceptions, in substance as follows.

Evidence was introduced tending to prove the following facts. The demanded premises consisted of a strip of land fifty-five hundredths of a foot wide and one hundred and four feet long, situate on the westerly side of the demandant's dwelling-houses, on the northerly side of Linwood Street in Somerville. One Binney made a plan of house lots in Somerville, dated April, 1847, which was duly recorded, and shortly afterwards the owner of such lots conveyed to the demandant's grantor lot No. 4 on such plan, and lot No. 3 west of it to the tenant's grantor, describing them according to the plan. Subsequently one Mason made another plan of the same lots and adjoining land, dated October, 1849, which plan was duly recorded, and coincided with the Binney plan in all respects as regards such lots. The Mason plan showed a "stone bound" on such adjoining land, and Walnut Street, a street running at about right angles with Linwood Street, and parallel with the side lines of the lots and a fence on Walnut Street. There was no reference to the Mason plan, or to the "stone bound," in any of the deeds.

The demandant offered evidence tending to prove that about the year 1860 a fence was erected as a boundary line between lots Nos. 3 and 4; that thereafterwards the fence existed more than twenty years continuously, and was once rebuilt by the owner of lot No. 3; that the fence was upon the line claimed by the demandant to be the true boundary line between the lots Nos. 3 and 4, and that from and after about 1860 the demanded premises had been used and occupied by her grantors and herself, owners of lot No. 4, for more than twenty years continuously, openly, adversely, and under a claim of right.

The tenant, in addition to evidence tending to contradict that of the demandant, offered evidence tending to prove that, measuring from the "stone bound" and from the fence on Walnut Street, the true boundary line between lots Nos. 3 and 4 was fifty-five hundredths of a foot easterly from the line claimed by the demandant, and so that the demanded premises were part and parcel of lot No. 3, and belonged to the tenant.

The tenant requested the judge to rule as follows:

"1. That the jury would not be justified in law to find the line of the fences described by the witnesses for the demandant as the true division line between lots Nos. 3 and 4 on the said Binney plan, in the absence of any evidence establishing them as such division line between said lots by agreement, or in some other manner that the law would allow or recognize; and that the lapse of twenty years during which the fences testified to had existed would not, and could not, establish any different line as the division line between the parties' land than that which was established as the true division line between said lots in accordance with said plans from a survey made by the civil engineers, starting from the stone bound and the face of the fence on Walnut Street, as testified to, which secured the full quantity of land in lots Nos. 3 and 4 to the parties to this suit, in accordance with said plans.

"2. That no such use of the fence or fences for a period of over twenty years between lots Nos. 3 and 4 on said plan, as testified to in this case, can in law establish the division line or boundary between said lots against the true line as claimed by the tenant, which said plans exhibit and the said surveyors confirm, and which shows each party to this action to be

already in possession of the respective lot of land to which each is entitled in the plans aforesaid.

"3. That the Binney plan referred to, and the surveys, which give the parties all the land to which they are entitled respectively, in law must govern, and that the verdict must be for the tenant.

"4. That known monuments must govern in the establishing of the division line between the two lots, and in determining the question at issue between the parties to this action, and that, as the stone bound and the fence on Walnut Street, these two monuments, existed as testified to by the two surveyors, and as surveys starting from either preserve the exact measurement and quantity of the land in each lot No. 3 and No. 4 on said plans, then it is for the consideration of the jury, and whether there can be set up any matter of the fence or fences, or boundary or claim as the boundary, as against those monuments in the absence of any agreement or dedication of or by the parties, as those monuments, or surveys from them, preserve the integrity and entirety of each lot on the said Binney plans, including the lots Nos. 3 and 4 thereon, and the boundaries of the same."

The judge declined so to rule, and instructed the jury, among other things, as follows:

"That they should consider and weigh the evidence as to the stone monument at the end of the row of lots, and the evidence as to the old fence by the side of Walnut Street; that these were two monuments, and the jury should consider the evidence as to them, and draw such inferences of fact from it respecting the true line between lots Nos. 3 and 4 as they found the evidence led to; that, on the other hand, there was testimony before the jury as to the existence of the fence between lots Nos. 3 and 4, as to how long it had been there, what its character was, and where it was; that they were to take that evidence also into consideration, and draw from it such inferences of fact as they found the evidence justified; that if they found that a fence established for the purpose of being a division line had existed between lots Nos. 3 and 4 for more than twenty years upon the line claimed by the demandant, or that a fence had existed there which was regarded during a period of more than twenty years by the

owners on one side and the other as a division line, and acqui
esced in and treated by them as such, that would warrant the
jury in finding that the line of said fence was the division
line between the parties ; that it was a question of fact for the
jury, whether the fence had become such an established erec-
tion by its existence, and the adverse use of the adjoining parcel
on the demandant's side, for more than twenty years continu-
ously, openly, and under a claim of right, as to constitute the
division line, and that it was a question of fact upon the whole
evidence whether the division line was that indicated by meas-
uring from the stone bound and the old fence on Walnut Street,
or that indicated by the fence claimed to have been erected
between lots Nos. 3 and 4."

The jury returned a verdict for the demandant; and the
tenant alleged exceptions.

*E. A. Alger*, for the tenant.

*W. S. Stearns & J. H. Butler*, for the demandant.

FIELD, J.   The writ is dated March 15, 1888.   The excep
tions recite that " the demandant offered evidence tending to
prove that about the year 1860 a fence was erected as a boun
dary line between said lots Nos. 3 and 4 ; that thereafterwards
said fence existed more than twenty years continuously, and
was once rebuilt by the owner of lot No. 3 ; that said fence was
upon the line claimed by the demandant to be the true boun
dary line between said lots Nos. 3 and 4, and that from and after
about 1860 the demanded premises had been used and occupied
by her grantors and herself, owners of lot No. 4, for more than
twenty years continuously, openly, adversely, and under a claim
of right."   This was evidence, not only that the line of the fence
was the true boundary line, but evidence of title in the demand-
ant up to the line of the fence acquired by adverse possession.
*Samuels* v. *Borrowscale*, 104 Mass. 207.   *Coyle* v. *Cleary*, 116
Mass. 208.   *Johnson* v. *Bean*, 119 Mass. 271.

The deeds of neither party refer to the Mason plan, or the
stone bound, or the fence on Walnut Street, and therefore these
are not monuments in the legal sense.   The evidence concern-
ing these was evidence for the jury, in connection with other
evidence, upon the position of the original boundary line be-
tween the lots, and whatever the position of that line was, or

was found to be, there is nothing in the exceptions which should prevent the jury from finding that the demandant had acquired title by adverse possession up to the line of the fence, if they believed her evidence. The requests for rulings are somewhat obscure, but, as we understand them, they ought not to have been given, and no error is shown in the instructions given.

*Exceptions overruled.*