C. E. FARRINGTON, *Plaintiff in Error*, v. FLETCHER GREER AND WILLIAM GREER, HER HUSBAND, *Defendants in Error*.

Division A.

Opinion Filed August 1, 1927.

458

*Thomas M. Lockhart,* of Fort Lauderdale, for Plaintiff in Error;

*Maxwell Baxter, of Fort Lauderdale,* for Defendant in Error.

STRUM, J.—Plaintiff in error, as plaintiff below, brought an action of ejectment against defendants in error. The declaration was in the statutory form. The issue tried was upon the plea of not guilty. At the conclusion of the testimony the court directed a verdict for defendants and plaintiff took writ of error. Questions other than those now presented were disposed of upon a writ of error to a

previous judgment. See Greer v. Farrington, 83 Fla. 243, 97 South. Rep. 384.

The property in question consists of four twenty-five foot lots in the City of Fort Lauderdale, situate on the corner of Island, or Middle, Street and West Avenue.

At the trial plaintiff made no effort to deraign title in himself either from an original source or from a grantor having possession and the right to convey the title. Plaintiff relied for his recovery solely upon a showing of prior possession in himself under color of title, which possession admittedly had not continued for a sufficient period to mature into title by adverse possession. Plaintiff contends, however, the such prior possession was sufficient to support his recovery as against these defendants because the latter, when they entered, were mere trespassers or intruders, strangers to the title, and that his possessory right in the lands was therefore superior to that of defendants.

Plaintiff introduced in evidence a quit claim deed dated September 31, 1920, by which the Sun Land Company quitclaimed the lands in question to plaintiff, and under which deed plaintiff immediately went into possession. The source of title of Sun Land Company was excluded from the evidence on objections of plaintiff, but was apparently based upon a tax deed issued by the City of Fort Lauderdale.

Plaintiff's testimony discloses that when he entered the lands under the quit-claim deed, the lands were unoccupied and had remained so for about two years previously; that plaintiff cut down the weeds thereon which were "tall and cumbersome," planted divers fruit trees on the land, moved his chicken coops thereon, plaintiff's dwelling being located upon an adjoining tract,—kept his cow on the land in question and used it for a milking place morning and night. Upon the land in question was an old and somewhat decrepit building in which plaintiff stored chicken and cow

feed, several gallons of paint, and the plaintiff also used the building for storage of bean hampers and for the sorting and storage of vegetables received from time to time from plaintiff's farm, as well as for the storage of certain papers and files from his law office. Plaintiff also kept his bicycle, and those of his two children, in the building aforesaid, and upon the land he stored a quantity of building tile. Plaintiff testified without objection that his possession was "open and notorious," and that he claimed the land as his own; that he paid certain delinquent taxes and paving liens against the property, although defendants have paid the taxes, save in one instance, since the latter entered the land.

About six months after the plaintiff thus went into possession, and while his possession of the character stated continued, the defendants "very early one morning," with some workmen, entered upon the lands and dispossessed plaintiff. The plaintiff thus describes the entry of the defendants upon the lands: "I was in possession of it (the land) at the time the defendant entered on the property. I did not give him permission to move on the property and don't know why he moved on it. One morning very early I heard some noise over there and I looked out and he was there. I didn't know defendant at the time. There were some workmen walking and moving around, working about the house, that was the first I ever knew of it." Plaintiff further testified that he ceased to occupy the land after the defendant thus took possession. It appears from the testimony that defendant's entry, though it was without plaintiff's permission, was effected in a peaceable manner. There was no breaking, no force nor the display thereof, no breach of the peace, and there is no showing of fraud or deceit.

Plaintiff thereafter brought this action to recover his former possession.

To support their plea, the defendants deraigned a record title to the lands from the Trustees of the Internal Improvement Fund, through mesne conveyances, into one Nathan B. Rader, and by warranty deed from Rader to Mrs. Fletcher Greer, one of the defendants, and the wife of the other defendant, William Greer. Plaintiff moved to strike the latter deed upon the ground that it was void as to plaintiff because, when the deed was executed on April 1, 1921, the plaintiff, and not the grantor in said deed, was in actual and adverse possession of the lands described in the deed, and that as between the plaintiff and the defendants, the latter were therefore mere trespassers or intruders, and strangers to the title. The motion was denied.

In this State the doctrine obtains that where a party who is in peaceable, *bona fide* and actual possession of the land with a present right of continued possession, is ousted by a bare trespasser or intruder who enters without any right or claim of title, the ousted party may recover upon proof of his prior possession only, and it is not essential to such recovery that such possession should have been held for the time required by the statute to acquire a prescriptive title by adverse possession. The right of the ousted person to so recover cannot be resisted by the trespasser or intruder by showing that there is or may be an outstanding title in another, but only by showing that the defendant himself either has title or authority to enter under the title. The theory of the doctrine is that a plaintiff in ejectment may recover on proof of prior possession against one not having a better right, that is, one who is a bare trespasser or intruder, and thus perfect his possessory rights. But a plaintiff in ejectment without title can not recover even as against a mere intruder without title, if such plaintiff was not himself in prior actual and unabandoned possession of the land when he was ousted; nor unless his right to be

restored to such possession continued when his action is begun. The general rule in ejectment that the plaintiff must recover upon the strength of his own title does not operate either to deny the acquisition of rights through prior possession without good title, or in proper cases to prohibit the enforcement of rights so acquired where the true owner does not intervene. As against one having no better title or right, prior possession or occupancy without title confers upon the occupant certain enforceable possessory rights in the land, and the plaintiff who recovers against a mere intruder by virtue of proper prior possession recovers, under those circumstances as much upon the strength of his own title as if he shows a good deed to the premises. Jackson v. Haisley, 35 Fla. 587, 17 South. Rep. 631; Seymour v. Creswell, 18 Fla. 29; Bass v. Ramos, 58 Fla. 161, 50 South. Rep. 945; Ashmead v. Wilson, 22 Fla. 255; Simmons v. Spratt, 20 Fla. 495; L'Engle v. Reed, 27 Fla. 345, 9 South. Rep. 213; Harris v. Butler, 52 Fla. 253, 42 South. Rep. 186; Scott v. Fairlie, 18 Fla. 438, 446, 89 South. Rep. 128; Goodwin v. Markwell, 37 Fla. 464, 19 South. Rep. 885. See also the notes to Freeman v. Funk, 46 L. R. A. (N. S.) 487.

In his brief, plaintiff thus summarizes his position: "The action of the Court in directing a verdict in favor of the defendants, would have been proper had not defendant's deed been champertous and void,—defendants would have deraigned their title back to the State of Florida and would have been entitled to recover against plaintiff notwithstanding plaintiff's prior possession, but as defendant's deed was champertous and absolutely void (because executed while plaintiff, and not the grantor in the deed, was in possession) he (the defendant), stood in no better attitude than a naked trespasser, and the plaintiff having

shown prior possession, was not required to deraign his title.''

The controversy, therefore, resolves itself into this proposition: If at the time of her entry upon the land the defendant Fletcher Greer was a mere trespasser or intruder without title, the judgment in her favor should be reversed, otherwise it should be affirmed.

When a deed of conveyance of real estate is executed as required by the Statute of Frauds, it operates under the Statute of Uses to vest title in the grantee, provided livery of *seisin* can be lawfully made by the grantor at the time of the execution of the deed. Skinner Mfg. Co. v. Wright, 56 Fla. 561, 47 South. Rep. 931; Scott v. Fairlie, *supra;* Vincent v. Hines, 79 Fla. 564, 84 South. Rep. 614. If, when the deed is executed, the land is in the actual adverse possession of another, the grantee will take his title subject to such adverse possession, whether he actually knew of such possession or not. In this State the common law doctrine obtains that a deed executed under such circumstances, that is, by a person out of possession, when the lands are held adversely by another, although good as between the grantor and grantee, and as to all other persons, is void and inoperative as to the party in adverse possession and those who afterwards come in under him. Ordinarily, in such case as action may be brought in the name of the grantor to recover possession, but not in the name of the grantee, and such recovery when had by the grantor will inure to the benefit of the grantee. Coogler v. Rogers, 25 Fla. 853, 7 South. Rep. 391; Nelson v. Brush, 22 Fla. 374; Vincent v. Hines, 79 Fla. 564, 84 South. Rep. 614; Reyes v. Middleton, 36 Fla. 99, 17 South. Rep. 937.

Assuming, as did the defendant, that the character of the possession of plaintiff was sufficient to operate as a *disseisin* of defendant's grantor, Rader, but not deciding

that question, we will consider the effect of the grantee-defendant's entry under the circumstances hereinabove related, since the contentions of the parties center around that question. By his action in ejectment the plaintiff, who is the former *disseisor,* admits the possession of the grantee-defendant. It should be remembered that this plaintiff, the *disseisor,* has shown in himself no title to the lands, either of record or *in pais* by adverse possession, and he has no rights therein save only those arising from his adverse occupancy prior to and at the time of the execution of the immediate deed under which defendants claim the record title.

The common law doctrine to the effect that a *disseisee* can not make a conveyance of land which will be valid as to the *disseisor* was founded partly upon the peculiar nature of livery of *seisin* under the ancient common law, and partly upon considerations of public policy. The doctrine was designed to prevent trafficking in dormant titles, thereby causing vexatious and unwarranted litigation against those properly in adverse possession. Although under Section 3795, Revised General Statutes 1920, a deed is not operative to transfer possession unless livery of *seisin* can lawfully be made at the time of the execution of the deed, the reasons which induced the strict application of the common law doctrine pertaining to champertous conveyances are now so far abated that although the doctrine survives in many jurisdictions the modern application thereof is not so rigorous or inflexible, nor is it always attended by the same result, as it was under the early common law. McMahan v. Bowe, 114 Mass. 140. In some jurisdictions the doctrine has become obsolete. In those jurisdictions where the doctrine still obtains, as it does here, the more recent interpretation of the doctrine as indicated by the general tendency of the decisions over the past

one hundred years or more has been that when it is said that the deed of one who is *disseised* is void, it is intended only to mean that such deed in inoperative to convey legal title and *seisin,* or a right of entry, upon which the grantee may maintain an action in his own name against one who has actual *seisin.* Those decisions do not embrace the thought that such a grantee may not enter under his deed, if he does so peaceably and lawfully; and thereby consummate his title. Such a deed is not void as a contract between the parties to it. The grantee may avail himself of the deed against the grantor therein by way of estoppel; or by action upon the covenants; or may recover the land from the *disseisor* by an action in the name of the grantor. Such a deed is void only as to the *disseisor,* and to him only by reason of his actual *seisin* and his holding adversely to the title of the grantor. The deed of a *disseisee* conveys no title which will support a real action in the name of his grantee, or give the latter a right of entry against the *disseisor* or his privies, but the doctrine goes no further. Farnum v. Peterson, 111 Mass. 148.

It has been held that a previously executed conveyance by a grantor, who, having the right to enter, has subsequently entered upon the land in a peaceable and lawful manner, is good to pass the title of such grantor notwithstanding another person was in actual and adverse possession of the land at the time of such conveyance and entry, and that the *disseisin* resulting from the former adverse possession is so far purged by the entry as to give operation to the deed. See Birthright v. Hall, 3 Munf. (17 Va.) 536; Oakes v. Marcy, 10 Pick (Mass.) 195. Likewise the purchase by the grantee in a deed, originally champertous, of the outstanding claim of the *disseisor* will confirm the grantee's title and render his deed fully operative. See 11 C. J. 267 (94), and cases cited. If the *disseisor* should

abandon his former possession such abandonment would inure to the grantee and give the latter *seisin*. The *disseisor* is permitted to dispute the true title only so long as his *disseisin* continues. The doctrine was established, not for offense, but for the defense of lawful possessory rights. Nichols v. Nichols (Ala.), 60 South. Rep. 855; Farnum v. Peterson; McMahan v. Bowe, *supra*.

It should be borne in mind that in Coogler v. Rogers, and Nelson v. Brush, *supra,* as well as in all other instances in which the doctrine has been considered by this Court in an action *in ejectment,* a situation was presented wherein a *disseisor* who still remained in possession was endeavoring to protect his possessory rights against a grantee of the *disseisee* who was out of possession, and who, in seeking to eject the *disseisor,* attempted to read in evidence against the *disseisor* in continued possession a deed executed by a grantor out of possession. Under those circumstances, the doctrine is available defensively, and such a deed is clearly inadmissible.

And so, although such a deed for the reasons stated, but for those reasons only, is void as to the *disseisor* in that it gives to the grantee no right of entry nor right of action in the name of such grantee to recover possession from the *disseisor*, yet if the grantee peaceably, lawfully and without fraud or force, or the display thereof, enters under such deed and obtains possession of the land, even though it be against the wishes of the *disseisor,* such grantee may avail himself of the title of his grantor obtained through the deed which is valid as between the parties to it, and as to all other persons, save only the *disseisor*, and, by uniting that title with his own possession thus acquired may thereby complete in himself a title as good as against the former *disseisor* who is without title, and who is then out of possession, which title can not be disputed by such *disseisor* in

a *real* action wherein the *disseisor* is actor and *in which the title is directly in issue,* although the grantee so entering might not be able to ·justify such an entry if tested in another form of action. Though the entry of the grantee under such circumstances may be *tortious,* he does not thereby forfeit his right to recover possession in the name of his grantor, or by other lawful means, and because he has that right the former *disseisor* without title, and then out of possession, in a real action in which the validity of the title is directly in issue can not regain possession from the grantee of the true title who is then lawfully in possession, without showing a better title than that of the grantee so in possession. See Rawson v. Putnam, 128 Mass. 552; Halstead v. Silberstein, 89 N. E. Rep. 443.

While a deed executed under such circumstances would not support an action by the grantee as plaintiff, in his own name, against the *disseisor* in possession, nor could such be read in evidence against such *disseisor* in an action wherein the latter defends his continued and present possession, it is otherwise when such grantee, lawfully, peaceably and without fraud, artifice or force, or the display thereof, has obtained possession under his deed and seeks to defend against ejectment by the former *disseisor* without title.

The land here in question was not fenced or otherwise enclosed. The building on the land was not locked or otherwise secured. The evidence shows that the defendants entered without force, fraud, deceit, or artifice, and in a peaceable, quiet, and open manner, although there is evidence that the entry occurred "very early in the morning." So far as the issues *in this form of action* are concerned, it was a lawful entry. Had this plaintiff resorted to an action of unlawful detainer, where "no question of title, but only a right of possession and of damages shall be involved," instead of resorting to the action of ejectment in which the

validity of the title is in issue, and in which questions other than those of mere possessory rights may be considered, and are frequently decisive of the issues, plaintiff might have been restored to his former possession, even as against the true owner. See Greeley v. Spratt, 19 Fla. 644.

The plaintiff having thus regained his former possession, the present defendant-grantee would necessarily be the actor in ejectment in an effort to recover under the record title, and if such action were brought in the name of this grantee-defendant, as plaintiff in that action, the present plaintiff would then be in a position to invoke, defensively, the doctrine hereinabove discussed, and upon which he attempts to rely in this action.

Had the entry of the grantee-defendant been unlawful as well as tortious, as for instance, if possession had been obtained by force, or the display thereof, or by a breaking, or a breach of the peace, or by fraud, collusion or deceit, a different situation might be presented even in an action in ejectment. But where a grantee in a deed originally champertous as to an adverse occupant, peaceably and lawfully obtains possession and by availing himself of the otherwise valid title of his grantor seeks to defend against an action in ejectment brought by the former occupant or *disseisor* without title, such a cause is not within the spirit of the doctrine pertaining to champertous conveyances, nor does such a situation present an instance of the mischief designed to be avoided by the doctrine.

Under the issues and the evidence in this case a verdict was properly directed for the defendant.

The judgment is affirmed.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.